**Julio F. GIANO, Plaintiff,**

v.

**Walter KELLY, Superintendent, Attica Correctional Facility; Thomas Coughlin III, Commissioner, NYS Department of Correctional Facilities; Hans Walker, 1st Deputy Superintendent, Attica Correctional Facility; Albert Hall, Deputy Sup't of Security, Attica Correctional Facility; J. Kihl, Hearing Officer, Attica Correctional Facility; R. Batherick, Lieutenant, Attica Correctional Facility; Booker, Correctional Officer, Attica Correctional Facility; W. Stranahan, Correctional Officer, Attica Correctional Facility; D. Bates, Correctional Officer, Attica Correctional Facility; R. Reyes, Correctional Officer, Attica Correctional Facility, Defendants.**

**No. 89–CV–727C.**

United States District Court, W.D. New York.

Nov. 16, 1994.

See also, 709 F.Supp. 1209.

Prisoners' Legal Services (Robert F. Bensing, of counsel), Plattsburgh, NY, for plaintiff.

G. Oliver Koppell, Atty. Gen. of the State of N.Y. (Douglas S. Cream, Asst. Atty. Gen., of counsel), Buffalo, NY, for defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Julio Giano brings a 42 U.S.C. § 1983 action concerning his placement in administrative segregation at the Attica Correctional facility. In a prior order, the court dismissed the first six causes of action on collateral estoppel grounds. Item 71. Defendants Walter Kelly, *et al.,* now seek summary judgment on the ninth and tenth causes of action in the plaintiff's amended complaint. Item 59. The ninth cause of action asserts that the defendants violated the plaintiff's Fourteenth Amendment equal protection rights by keeping him in the more restrictive conditions of administrative segregation than those enjoyed by the general prison population. The tenth cause of action asserts that the defendants violated the plaintiff's Fourteenth Amendment due process rights by failing to provide a meaningful periodic review of the plaintiff's status in administrative segregation. Both parties agree that the seventh and eighth causes of action will be decided at a later date. Item 98 at 1; Item 111 at 4–5.

Plaintiff now seeks partial summary judgment on both the ninth and tenth causes of action. Defendants oppose plaintiff's motion and cross-move for summary judgment on both causes of action. It is the defendants' position that both causes of action were decided in the prior Article 78 C.P.L.R. proceeding at the state level and therefore cannot be heard by this court due to collateral estoppel. Plaintiff opposes defendants' cross motion on several grounds. First, plaintiff claims that the defendants have not met their burden in showing that these claims received adequate review at the state level. Second, plaintiff asserts that the state court did not address the adequacy of defendants' review process. Third, the fact that Giano was *pro se* at the state level in itself suggests an inadequate review. Finally, plaintiff claims that the introduction of new evidence in the form of a witness of the assault upon Giano was not considered by the State and warrants the preclusion of collateral estoppel.

### FACTS

A detailed version of the facts surrounding this case can be found in the prior order of this court dated September 16, 1992. Item 71. The following is a brief overview of facts relevant to the court's consideration of the present motion. Plaintiff Julio Giano is a New York State prisoner. After his escape attempt from Sing–Sing, Giano was moved to the Shawangunk Correctional Facility. As punishment for the attempted escape, he was sentenced to five years in the Special Housing Unit. After twenty months and good behavior, Giano was released into the general prison population. Two months later, Giano was stabbed in the back by an unidentified inmate. Giano sustained serious injuries; and after recovering in a local hospital, he was returned to Shawangunk and kept in "Involuntary Protective Custody" ("IPC") for his protection. Shortly thereafter, on October 6, 1988, he was transferred to the Attica Correctional Facility, where he was placed in the Special Housing Unit ("SHU"). On October 9, 1988, Giano wrote a letter to defendant Superintendent Walter Kelly protesting his placement in "Administrative Segregation" because he was deprived of many of the privileges that are afforded to prisoners in the general population. Giano also wrote to defendants Kelly and Coughlin protesting this treatment. In response, on October 15, 1988, Giano was given a report made by defendant Bathrick at the request of defendant Hall, stating that he was to remain in the SHU. At the plaintiff's request, a hearing was held on October 20, 1988.

The administrative hearing was run by defendant Hearing Officer Kihl. Defendants Coughlin and Kelly and certain inmates at the Shawangunk facility were not called as witnesses despite the request of Giano. Kihl ruled that their testimony was not relevant, and therefore not allowed. Walker, Bathrick, and Hall testified that there were two reasons behind their decision to keep Giano in Administrative Segregation. Item 46, Ex. F, Tr. at 31. First, Giano's history of escape attempts warranted keeping him out of the general population. Second, the specific information regarding the stabbing incident was unknown, and Giano was not willing to

volunteer information. The ultimate decision to keep Giano in Administrative Segregation was based upon maintaining safety at the Attica facility. Item 71 at 5.

After exhausting all of his administrative remedies, plaintiff filed an Article 78 C.P.L.R. action in state court on April 4, 1989. The respondents in the action were Commissioner Coughlin and Superintendent Kelly. The plaintiff set forth many of the same factual and constitutional allegations that were before this court in 1992. See Item 71. These allegations include failure to provide a hearing in a timely manner, failure to include witnesses in support of plaintiff, and improper placement in administrative segregation. Further, the State action challenged the constitutionality of Prison Directive No. 4933 as violative of the due process clause of the Fourteenth Amendment. Plaintiff also alleged unfair treatment and compared his treatment to the privileges of an inmate in the general population. The Appellate Division affirmed the decision of Hearing Officer Kihl.

## DISCUSSION

### I. Collateral Estoppel

█ Defendants move to dismiss both the ninth and tenth causes of action by summary judgment on collateral estoppel grounds, asserting that the issues of ultimate fact have already been tried and decided against Giano in state court and cannot be relitigated. A collateral estoppel claim is appropriately decided on summary judgment when, as here, "[t]here is no dispute as to what occurred at the state-court hearing, or as to what questions were before the court, or as to what issues were necessarily decided." *Golino v. City of New Haven,* 950 F.2d 864, 868 (2d Cir.1991). In determining whether or not an action is collaterally estopped, a New York court must first determine if the issues presented are identical to issues already presented in the prior proceedings. Next, a court must determine if the plaintiff had a "full and fair opportunity" to litigate the claim in those proceedings. *Schwartz v. Public Admin. of Co. of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). At the present time, this court must again compare the state action and response to the causes of action in question.

### A. Equal Protection Claim

█ Plaintiff's ninth cause of action asserts that the defendants violated the plaintiff's equal protection rights. By maintaining him in administrative segregation, plaintiff claims that he was unconstitutionally deprived of privileges afforded to prisoners in protective custody. The plaintiff argues that the officials have no rational basis for distinguishing between inmates placed in protective custody for their safety and inmates placed in administrative segregation. Further, plaintiff asserts that the party raising collateral estoppel has the burden to prove that the prior decision "squarely addressed and specifically decided the issue." *Khandbar v. Elfenbein,* 943 F.2d 244, 248 (2d Cir. 1991). Defendants assert that this claim has already been decided in the state court.

Although the plaintiff did not label his claim in the state proceeding as an equal protection rights violation, his arguments clearly addressed the issue. In plaintiff's *Brief For Petitioner–Appellant,* claims of discrimination and unequal treatment are discussed in depth. Item 46, Ex. E at 22–36. The plaintiff's main argument addressed the similarity of his treatment to an inmate who is being punished for violating a regulation. Item 46 at 22–26. The discussion involving the disparity of treatment between plaintiff and inmates in the general population addresses the equal rights protection question.

In both motions, the plaintiff asserts that defendants discriminated against him by limiting his right to visitors, phone calls, personal property, and commissary as punishment for failing to reveal information surrounding his stabbing. Giano claims that this cause of action does not meet the identity requirement of collateral estoppel, because a comparison of protective custody inmates to inmates in administrative segregation was never made. However, he argues identically that his rights were violated because he was treated differently from other inmates who had not broken any prison regulations. Unlike the authorities he cites, no different test or standard need be applied here to decide

his previously litigated issue. *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.,* 937 F.2d 729 (2d Cir.1991); *Cullen v. Margiotta,* 811 F.2d 698 (2d Cir.1987).

Plaintiff next asserts that the fact that the state claim was litigated *pro se* is a crucial factor in determining the applicability of collateral estoppel. Item 115 at 9. Plaintiffs who proceed *pro se* are entitled to have their arguments held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Giano asserts, however, that since the State and some of the federal action were handled *pro se,* the court should disallow the application of collateral estoppel. *West v. Ruff,* 961 F.2d 1064 (2d Cir.1992); *Clark v. Department of Correctional Services,* 564 F.Supp. 787 (S.D.N.Y. 1983).

Unlike the plaintiffs in his cited authorities, Giano is an experienced *pro se* litigator. *See* item 71 at 12. His papers were fully developed and complete. Moreover, he had a full and fair opportunity to raise his arguments in favor of the equal rights protection claim in the state forum. "A prior state proceeding, including an Article 78 proceeding, will preclude relitigation of a civil rights claim in a federal court if the state proceeding reached the federal constitutional issues involved." *Powell v. Ward,* 643 F.2d 924, 934 (2d Cir.1980) (citations omitted). An Article 78 proceeding will not automatically preclude litigation even when the same factual circumstances are presented (*see, e.g., Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986)), because plaintiffs who prevail can seek damages unavailable in the state forum. In the instant case, however, Giano was unsuccessful in arguing that his constitutional rights were violated and in attempts to relitigate the identical issue.

As a result, the plaintiff is collaterally estopped from raising the issue in this court.

The defendants' request for summary judgment on the ninth cause of action is granted.

### B. Due Process Review

■ Plaintiff's tenth cause of action asserts that the defendants failed to provide a meaningful periodic review process that fairly considered Giano's continued placement in administrative segregation. Defendants assert that plaintiff challenged his continued confinement in administrative segregation throughout the state proceedings and, as a result, is collaterally estopped from raising the adequacy of the review process in this court. It is the plaintiff's contention that the state proceeding dealt solely with the hearing itself and violations that occurred during the hearing, and did not address the legitimacy of the review process. Item 115 at 3.

When prison officials are faced with the task of placing and maintaining an inmate in administrative segregation, they must follow Prison Directive 4933. Item 111, Ex. 20. Directive 4933 part C,4 sets forth the review procedure officials must follow, providing for weekly review for the first two months of administrative segregation, and monthly reviews thereafter. *Id.*

In its prior order, this court noted that plaintiff's state claim specifically challenged the constitutionality of Prison Directive 4933, claiming that it violated plaintiff's due process rights. Item 71 at 7. Upon close inspection, plaintiff's constitutional challenge focused on Directive 4933 part C,3 [1] which deals specifically with a prisoner's status while in administrative segregation. See Item 46, Ex. C at 27. However, in the current due process claim, plaintiff is unequivocally challenging Prison Directive 4933 part C,4.[2] Certain passages within plaintiff's state filings (Item 46, Ex. C and E) could be interpreted as protesting the fact that he was maintained in administrative segregation, but

---

1. C, 3 states that: "When housed in SHU, Administrative Segregation inmates will be subject to the same rules and regulations as those disciplinary inmates who have completed 30 days of satisfactory adjustment."

2. C, 4 states that: "Inmates assigned to Administrative Segregation Status shall have such status reviewed every 7 days for the first two months

and every 30 days thereafter by a three-member committee consisting of a representative of the facility Executive Staff, a Security Supervisor, and a member of the Guidance and Counseling staff. The results of such review shall be forwarded, in writing to the Superintendent for final determination."

the record does not clearly support that the review process itself was challenged. Therefore, the plaintiff is not collaterally estopped from bringing the tenth cause of action.

## II.  The Constitutionality of the Review Process

Plaintiff claims that he was not afforded adequate due process because the defendants failed to provide for a meaningful review of his status in administrative segregation. As a result, the plaintiff asserts that his Fourteenth Amendment due process rights were violated. In order to address the plaintiff's due process claim, the court must first determine whether the plaintiff had a protected liberty interest in remaining free from administrative segregation. If so, the court must determine if the periodic review of the plaintiff's status in administrative segregation afforded due process.

### A.  Protected Liberty Interest

■ "Generally, restrictive confinement imposed for administrative reasons does not implicate a liberty interest unless the state, by enacting certain statutory or regulatory measures, creates a liberty interest in remaining in the general prison population." *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir.1990) (citing *Hewitt v. Helms*, 459 U.S. 460, 468–72, 103 S.Ct. 864, 869–72, 74 L.Ed.2d 675 (1983)). However, a state may choose to create such an interest by using statutory or regulatory "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed ..., and that administrative segregation will not occur absent specified substantive predicates—viz., 'the need for control,' or 'the threat of a serious disturbance.'" *Hewitt*, 459 U.S. at 471, 103 S.Ct. at 871. In *Wright v. Smith*, 21 F.3d 496 (2d Cir.1994), the United States Court of Appeals for the Second Circuit recently noted that words of a mandatory nature do not in themselves create the liberty interest in remaining free of administrative segregation. Rather, the words must be of the sort that channel decision makers in specific directions, not merely guide them.

■ Prison Directive 4933 is based upon Title 7 of the Official Compilation of Codes, Rules & Regulations of the State of New York ("NYCRR"). Section C,1 of the Prison Directive reads as follows: "This section applies to inmates assigned involuntarily to SHU as a result of a hearing conducted pursuant to 7 NYCRR, Chapter V, 254, which sets forth specific reasons why administrative segregation is warranted." Amended in 1990, NYCRR § 301.4 adds: "Such hearing *shall* be conducted within 14 days of an inmate's admission to administrative segregation." (Emphasis added.) Section C, 2 states: "Administrative Segregation admission results from a determination by the facility that the inmates' presence in general population would pose a threat to the safety and security of the facility." Finally, Prison Directive 4933 Section C, 4 reads as follows:

> Inmates assigned to administrative segregation status *shall* have such status reviewed every seven days for the first two months, and every 30 days thereafter, by a three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff. The results of such review shall be forwarded, in writing, to the superintendent for final determination.

(Emphasis added).

From the wording of this Directive, the court is satisfied that a liberty interest in remaining free from administrative segregation does exist. In a similar analysis, the *Wright* court found that "New York's regulations specifying the circumstances under which administrative segregation could be imposed sufficiently established mandatory substantive predicates under Helms to create a liberty interest." 21 F.3d at 499 (citing *Matiyn v. Henderson*, 841 F.2d 31 (2d Cir. 1988)). The language within the Directive does not provide prison officials with a choice; rather, "the language [is] of an unmistakably mandatory character" which officials must follow, (*Hewitt* 459 U.S. at 471, 103 S.Ct. at 871), and is "not merely a matter of guidance...." *Wright*, 21 F.3d at 499. Officials must provide a hearing, must set forth reasons for admission, and must pro-

vide written periodic reviews for an inmate's continued confinement in administrative segregation.

### B. Due Process

The next step in the analysis is to determine if the review process meets due process requirements. This court has already determined that the due process concerns surrounding the plaintiff's initial placement in administrative segregation were addressed by the state court. Item 71. Thus, the following section is specifically limited to whether or not the review process mandated by Directive 4933 C,4 is constitutionally adequate.

In analyzing the adequacy of the review process, the court must apply the test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This analysis weighs three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Due process concerns are limited in the prison context (*Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)), and the decisions of prison administrators should be given a large degree of deference. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). However, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Hewitt,* 459 U.S. at 477 n. 9, 103 S.Ct. 874 n. 9. Nevertheless, "prison administrators can rely on 'purely subjective evaluations and on predictions of future behavior.'" *Id.* at 472, 103 S.Ct. at 871 (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981)).

The plaintiff argues that the defendants did not hold meaningful reviews. Item 98 at 6. It is clear from the Administrative Hearing and the state proceedings that Giano was placed in administrative segregation based upon the three factors discussed earlier: the stabbing incident, the escape risk, and the prevailing conditions at Attica. Item 71, 4–5. However, it is not clear from the records that Giano was *maintained* in administrative segregation for these reasons. Every written review recommendation referred to incidents in which Giano was involved while at Shawangunk. On all 70 written review forms, the same words appear: "Inmate was initially placed in Administrative Segregation upon his arrival at this facility from Shawangunk Correctional Facility due to incidents he was involved in Shawangunk that posed a serious threat to the security of that facility or any other facility in which he is housed." Item 98, 28–97. Furthermore, the letters written by defendant Coughlin and others in response to the plaintiff do not seem to specifically contemplate Giano's administrative segregation status. Item 111, Exs. 10, 11, 12, 14, 16, 17. Instead, they simply suggest that Giano continue "efforts toward positive adjustment" (Ex. 12) and that he would be released when he was no longer considered to be a threat. *Id.* From the plaintiff's perspective, the duration of his administrative segregation status must have seemed indefinite.

Defendants contend in their depositions that Giano was placed and maintained in administrative segregation due to the stabbing incident at Shawangunk and a lack of information about those events, Giano's escape record, and the prevailing conditions at the Attica Correctional Facility, all of which made him a security risk. Item 111 at 21. However, shortly after the stabbing incident, another inmate named Melvin Richardson, who had witnessed the event, submitted information to officials at Shawangunk. Item 98 at 4–8. The written review records at Attica do not reflect any investigation into information that may have been developing concerning these events. This is a strange omission when one considers that the stabbing incident was one of the defendants' rea-

sons for maintaining Giano in administrative segregation.

The Second Circuit has not yet addressed the nature of due process rights which must be afforded for administrative segregation review. However, *Mims v. Shapp,* 744 F.2d 946 (3rd Cir.1984), decided by the Third Circuit shortly after *Hewitt* was announced, is instructive here. *Mims* involved an inmate named Burton who, while serving a sentence for the murder of a police officer, participated in the killing of a Deputy Warden. Burton subsequently served over five years in administrative segregation and was released only after a court order. Burton brought a civil rights action claiming that his due process rights were violated by his continued confinement in the Behavioral Adjustment Unit ("BAU").

After determining that a liberty interest in remaining free of administrative segregation did exist, the *Mims* court applied the due process analysis set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and determined that both the governmental and private interests at stake were high. The crucial governmental interest in maintaining prison safety was balanced against Burton's potentially limitless stay in administrative segregation. *Id.* Acknowledging the high degree of deference that should be afforded to prison authorities, the court recognized that:

> the governmental interest involved in a good faith decision to subject a prisoner to administrative segregation may fluctuate with the passage of time and change of circumstances. The validity of the government's interest in prison safety and security as a basis for restricting the liberty rights of an inmate subsists only as long as the inmate continues to pose a safety or security risk. . . .
>
> To insure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the fourteenth amendment.

*Id.* at 953–54. The *Mims* court scrutinized the review and found that it was substantial enough to have afforded Burton adequate due process. The court concluded that "the periodic review employed by [the officials], which relied upon their subjective evaluations of Burton, comported with minimum constitutional standards." *Id.* at 954.

Similar to the procedure in *Mims,* Prison Directive 4933 C, 4 requires weekly review for the first two months, and reviews every thirty days thereafter. As in *Mims,* both the governmental interest in maintaining prison safety and Giano's private interest in remaining in the general population are high. As noted earlier, maintaining prison safety is of the utmost importance. However, Giano's interest in remaining free of the restrictive conditions of administrative segregation is equally compelling. In order to justify an inmate's continued confinement in administrative segregation, prison officials must be prepared to offer evidence that the periodic reviews held are substantive and legitimate, not merely a "sham."

The defendants argue that Giano was given weekly reviews for the entire length of his confinement, more than required by the Directive. Item 111 at 21. However, simply because reviews are held on a weekly basis does not ensure that the reviews are meaningful. Defendants are correct in asserting that *Hewitt* requires only an informal review. Under federal and state law, an inmate is not required to have the dates of his reviews, the decision of the reviews, the identity of the reviewers, or information regarding what would need to change in order to be released. *Id.* at 22. Defendants are also correct in asserting that subjective evaluations of an inmate are acceptable. *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871. Despite the fact that subjective evaluations can be used, the Supreme Court has suggested that a governmental official is required to substantiate a decision based upon subjectivity. *Id.* at 477 n. 9, 103 S.Ct. at 874 n. 9.

From the depositions of the defendants, it is clear that they cannot recall if the officials at Shawangunk were contacted to gather information regarding the stabbing. Item 111, Ex. 21, Walker deposition at 10, Hall deposition at 23, Ex. 5, Ex. 6, Kelly deposition at 14. While it is possible that the reviewers at Attica received this information and decided to keep Giano in administrative segregation

for the other two reasons cited, the written review records do not illustrate an investigation into the events or any documented change in the reasoning behind Giano's continued confinement. "The validity of the government's interest in prison safety and security as a basis for restricting the liberty rights of an inmate subsists only as long as the inmate continues to pose a safety or security risk." *Mims,* 744 F.2d at 953. The record in this case does not clearly reflect that the defendants carefully considered Giano's status.

As plaintiff's counsel asserted during oral argument, the defendants' failure to provide a meaningful review became more onerous as Giano's length of confinement increased. Two years after the Third Circuit decided *Mims,* it ruled that a plaintiff who remained in a restricted housing unit for a full year with no more than a rote review was denied due process, finding that:

> [O]ver time reasons which would have justified [the plaintiff's] early detention in administrative custody were applied in a rote fashion in later review when experience should have led officials to let [the plaintiff] into the general population.... Due process was violated because the monthly reviews ... were perfunctory, thus denying [the plaintiff] the most fundamental right of due process: a *meaningful* opportunity to be heard. *See Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981).

*Sourbeer v. Robinson,* 791 F.2d 1094, 1101 (3rd Cir.1986). The court went on to cite *Mims* with approval: "To insure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the fourteenth amendment." 791 F.2d at 1101.

Several things could have been done that would have illustrated that the defendants genuinely contemplated Giano's continued confinement without placing an undue burden upon the government. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. For example, inmates in disciplinary segregation status are provided with information regarding the reasons for and the length of their confinement. 7 NYCRR 254.7. Giano could have been

given this information. In addition, Giano could have been informed of the dates and results of his reviews. Furthermore, Giano could have been informed of what he needed to do to effectuate his efforts toward positive adjustment. Finally, after a specified period of time, perhaps Giano could have been given an opportunity to present information that would have shown that he is no longer a threat to the facility. If some or all of these suggestions are utilized, the Supreme Court's concern of administrative segregation being a pretext for indefinite confinement could be alleviated.

### III.   Qualified Immunity

■ Defendants argue that even if this court found the review process unconstitutional, they are entitled to qualified immunity. "The doctrine of qualified immunity shields state officials from liability where they did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wright,* 21 F.3d at 500 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The question before the court is whether or not the officials were sufficiently guided so that they could have objectively known that their actions in reviewing administrative segregation status violated the plaintiff's due process rights.

The *Wright* Court held that:

> In determining whether a right was clearly established at the time the defendants acted, a court should consider:
>
> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

21 F.3d at 500 (citations omitted). There is no question that the right to due process is a 'clearly established right.' However, there has been no case law in the Supreme Court or the Second Circuit that specifically ad-

dresses the nature of due process rights that surround the review of an inmate's status in administrative segregation.

Giano's placement and continued confinement in administrative segregation were based on the three factors discussed earlier: the stabbing incident, the escape record, and the conditions at Attica. Item 111 at 21. The weekly written review reports never referred to the reasons nor showed that there was any attempt to reevaluate Giano's status. The depositions of the reviewers do not substantially refute the impression given by these reports that Giano's continued confinement was renewed at each review without any type of reevaluation of the evidence against him.

At the time of Giano's segregation in 1989–90, *Hewitt* had established that a liberty interest exists in remaining free of administrative segregation. *Matiyn,* decided in 1988, had established that New York's regulations created a liberty interest under *Hewitt.* While *Hewitt* warned that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate" (459 U.S. at 477 n. 9, 103 S.Ct. at 874 n. 9), defendants argue that prison officials were only required to "engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* Defendants assert that *Hewitt* did not clearly establish what the content of the reviews should be, nor what should be recorded in the written review process.

Giano responds that he was denied due process because the defendants failed to provide a well-recognized right to *meaningful* review. Defendants correctly maintain that the Second Circuit has not yet addressed the question of what constitutes meaningful review of continued confinement in administrative segregation and that the New York State procedure would be facially adequate in any circuit which has looked at the question. *See, e.g. Sourbeer,* 791 F.2d 1094 (3rd Cir. 1986); *Sheley v. Dugger,* 833 F.2d 1420 (11 Cir.1987); *Clark v. Brewer,* 776 F.2d 226 (8th Cir.1985). However, a facially adequate procedure can fail to afford due process if it is not "granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,*

380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). While defendants argue that the plaintiff has made no factual showing of a lack of good faith or pretextuality, the court finds sufficient documentation on the record to create a dispute regarding the nature and adequacy of the review of Giano's continued administrative segregation to deny summary judgment.

### CONCLUSION

The defendants' motion for partial summary judgment to dismiss plaintiff Julio Giano's ninth cause of action is granted. Giano's equal rights protection claim is collaterally estopped because it was tried and decided in the state court. However, the tenth cause of action alleging a denial of plaintiff's due process right to a meaningful review of his continued confinement in administrative segregation was not previously litigated. The evidence on the record shows a genuine issue of fact concerning the adequacy of the review process as applied to the plaintiff. While the constitutional parameters of this process have not been defined by controlling authority, the right to a meaningful review had been clearly established prior to the events in this lawsuit. Accordingly, the defendants' motion for summary judgment on Giano's tenth cause of action based on collateral estoppel and qualified immunity is denied.

So ordered.