Robert J. GOLUB, Plaintiff,

v.

Thomas A. COUGHLIN, III; Hans Walker; Ross Curry; Michael C. Maher; Donald Selsky, Defendants.

No. 92–CV–1030 (NPM).

United States District Court,
N.D. New York.

March 21, 1995.

Robert J. Golub, pro se.

Judith I. Ratner, Asst. Atty. Gen., Albany, NY, for defendants.

### OPINION AND ORDER

BAER, District Judge.

Chief Judge Thomas J. McAvoy of the United States District Court for the Northern District of New York transferred this dispositive motion to me, by order dated November 5, 1994, due to the backlog caused by a number of vacancies in his district.

Plaintiff *pro se* Robert J. Golub ("Golub"), a New York State prisoner, brings suit under 42 U.S.C. § 1983 asserting violations of various constitutional rights arising out of his confinement in Involuntary Protective Custody ("IPC") at the Auburn Correctional Facility, located in Auburn, N.Y. Defendants move for summary judgment.

### I. Background

On April 3, 1990, plaintiff was convicted of murder in the second degree for the publicized killing and mutilation of a fourteen year old girl who lived in plaintiff's neighborhood in Valley Stream, Long Island on March 3, 1989. He was sentenced on June 1, 1990 to a prison term of twenty-five years to life. Defendants' Ex. A, "Commitment to the State Department of Correctional Services." On June 15, 1990, plaintiff entered Downstate Correctional Facility. *Id.*

Plaintiff was transferred to the Auburn Correctional Facility on August 27, 1990, after an approximately one-and-a-half month stay at Sing Sing's Transfer Unit. Defendants' Ex. D, "Chronological Entry Sheet." On August 28, 1990, plaintiff was notified that due to the "severe notoriety and nature of [his] crime ... the administration at Auburn fe[lt] his safety would be in jeopardy if he remain[ed] in [the] general population." Defendants' Ex. D, "Notice to Inmate, Special Housing Protective Admission Consideration."

That day plaintiff was interviewed by a corrections officer. During the interview, plaintiff objected to being placed in protective custody. Also on that day, plaintiff signed a form statement that he felt he had "no need for protection from anyone ... at Auburn" and that there was "no threat to [his] life by remaining in the general population." Defendants' Ex. D, Stmt. by Robert J. Golub, Aug. 28, 1990.

The following day a recommendation was issued, which was given to plaintiff, stating that "[d]ue to the extreme notariety [sic] and heinous nature of [his] crime, it [was] felt that [his] presence in [the] general population at Auburn Corr. Fac. would be a threat to the safety and security of [the] facility. Therefore, [he was] being recommended to be placed in Involuntary Protective Custody Status." Defendants' Ex. D, "Involuntary Protective Custody Recommendation", Aug. 29, 1990.

The recommendation also included a "Notice to Inmate" advising Golub that a hearing would be conducted within fourteen days to review the recommendation, as required by New York State regulations. N.Y.Comp. Codes R. & Regs. tit. 7, § 330.3(b).[1] The notice also advised the plaintiff that he was entitled to an interview with a corrections officer ranked lieutenant or higher within 72 hours of his receiving notice of the recommendation. As noted above, plaintiff had been interviewed by a corrections officer the day before, and had already voiced his objection to being confined in involuntary protective custody ("IPC"). The superintendent's hearing to review plaintiff's IPC status was conducted on September 10, 1990 by defendant Michael Maher. Plaintiff alleges that by conducting the hearing on September 10, 1990, the defendants failed to comply with the fourteen-day requirement imposed by the regulations. September 10th, however, is the fourteenth day after August 27th, and thus defendants did comply with the regulatory time period.

█ Plaintiff further alleges that the hearing was "arbitrary, capricious, and an abuse of discretion." Plaintiff's Mem. L. in Opp. to Defendants' Mot. for Summ. J. ("Plaintiff's Brief") at 7. Defendant Donald Selsky had upheld the determination made at that hearing, finding that it was "conducted in accordance with established procedures." *Id.* New York regulations require that IPC status be reviewed on a periodic basis, generally one time for each month of continuing IPC status. N.Y.Comp.Codes R. & Regs. tit. 7, § 330.3(b)(2). Plaintiff alleges that the subsequent hearings held to review his IPC status were likewise summary, arbitrary and capricious. Complaint, ¶¶ 17–19.

On May 31, 1991, plaintiff filed an Article 78 proceeding with the Supreme Court of the State of New York, County of Cayuga, "challenging his continued confinement" in IPC. Plaintiff's Mem. at 8. Acting Justice Robert A. Contiguglia found for plaintiff and ordered that plaintiff be transferred to the general population at Auburn, explaining that:

> Reviews of [Golub's] status, while timely and in compliance with state codes, have been summary and in no way provide due process. The sole articulable reason for placing [Golub] in involuntary protective custody is the violent nature of his underlying offense and its notoriety. If such was [sic] sufficient, every inmate in Auburn Correctional Facility would be in protective custody. No threat against petitioner has ever been made by anyone, anywhere.

*Golub v. Walker,* Civ. No. 91–2066 (N.Y.Sup.Ct.Cayuga County Sept. 6, 1991). On September 13, 1991, plaintiff was transferred to the Southport Correctional Facility. Plaintiff had served a total of 217 days in IPC, which excludes time for which he was ordered "keeplocked" for independent disciplinary violations.

## II. *The Law*

### A. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

---

1. Part 330 of N.Y.C.R.R. is entitled "Protective Custody Status Inmates," and provides in pertinent part:

   (b) *Involuntary protective custody inmate.*
   (1) An inmate in this status shall have a hearing, conducted within 14 days in accordance with the provisions of Part 254 of this Title, to determine the need for protective custody admission.

   (2) An inmate in this status shall have such status reviewed every 30 days by a three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff. The results of such review shall be forwarded, in writing, to the superintendent for final determination. *Id.*

In a motion for summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party, who must present specific facts which show that there is a genuine issue for trial. *Malik v. Tanner*, 697 F.Supp. 1294, 1299 (S.D.N.Y.1988). However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight*, 804 F.2d at 11–12. As to materiality, "substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### B. Due Process While in Administrative Segregation

In *Giano v. Kelly*, 869 F.Supp. 143, 150 (W.D.N.Y.1994), a recent case addressing the same issue here, the Western District of New York pointed out that the "Second Circuit has not yet addressed the nature of due process rights which must be afforded for administrative segregation review." The defendants in that case based their motion for summary judgment on that absence of law and the qualified immunity against section 1983 liability provided where the state officials "did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wright v. Smith*, 21 F.3d 496, 500 (2d Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). *Giano*, however, failed to grant summary judgment against the inmate, stating that although New York's requirement of periodic review constitutes a "facially adequate procedure," even it can "fail to afford due process if . . . not 'granted at a meaningful time and in a meaningful manner.'" 869 F.Supp. at 152 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). *Giano* felt there was an issue of fact as to whether the inmate's hearings had been meaningful, explaining that

certain actions on the part of defendants would have "illustrated that the defendants [did] genuinely contemplate[ ] [inmate's] continued confinement without placing an undue burden upon the government." *Giano*, 869 F.Supp. at 151. Those actions included informing the inmate of the reasons for and length of his confinement, the dates and results of his reviews, and the steps he needed to take in order to move into the general population.

In the instant case, as indicated above, Golub was provided in writing with the reason for his being placed in IPC, and was notified in writing after each review took place, Defendants' Ex. B in Supp. of Mot. for Summ. J. Moreover, Golub was provided with separate written explanations for his continuing IPC status on the three occasions that he submitted written protests against same. Those explanations indicate that defendants were well aware of their reason for keeping Golub in IPC status, and reveal that Golub had also spoken with prison authorities on numerous occasions concerning the matter. Letter from E. Dann to R. Golub, dated Oct. 30, 1990 (Plaintiff's Ex. F) ("[T]he nature of your crime and the publicity that was generated as a result of said crime make it necessary to leave your status as is."); Letter from E. Dann to R. Golub, dated Dec. 28, 1990 (Plaintiff's Ex. F) ("You have to understand the position of this facility's Administration in regard to possible harm that may come to you in General Population. We must do everything in our power to alleviate any possible problems based on your instant offense. Based on this necessity[,] I must keep you in your present status."); Letter from E. Dann to R. Golub, dated May 28, 1991 (Plaintiff's Ex. F) ("We have spoken on a number of occasions on your status. The reason for your status has not changed and at the present time your IPC status will remain the same."). Finally, given the reason for his IPC status—the nature of his crime—there was little that defendants could inform Golub he should do in order to enhance his chances of being removed from IPC.

I do not find support for the contention that Golub's periodic reviews were anything

but meaningful. Golub had been convicted in the publicized killing of a fourteen year old girl who lived in his neighborhood in the Long Island community of Valley Stream. In addition, the girl's body had been mutilated. Whether the ensuing media frenzy occurred due to the heinous nature of the crime, the fact that it involved two inhabitants of a generally peaceful area, or both,[2] I will not second guess the determinations made by defendants in maintaining Golub in IPC status as a result. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court stated that the decisions of prison administrators are to be given great deference. And in the area of administrative confinement, the Court has specifically held that "prison administrators can rely on 'purely subjective evaluations and on predictions of future behavior.'" *Hewitt v. Helms,* 459 U.S. 460, 474, 103 S.Ct. 864, 873, 74 L.Ed.2d 675 (1983) (quoting *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981)).

Moreover, defendants are correct in stating that Golub "cannot simply rely on his success in his Article 78 [proceeding] as the basis for holding defendants liable for constitutional violations under section 1983." Defendants' Memo at 9. That Golub was ordered released from IPC by the state court does not necessarily mean the defendants are exposed to section 1983 liability for their decisions in maintaining him there. It only indicates the court's finding that, at that time, IPC was no longer warranted for Golub.

### III. *Conclusion*

Because I find no triable issue as to material issues of fact and because defendants are entitled to judgment as a matter of law, I grant defendants' motion for summary judgment.

**SO ORDERED.**

2. In light of these circumstances, I must disagree with the state court's conclusion quoted above, which states that if the criteria used to maintain Golub in IPC status were applied to all inmates at the Auburn Correctional Facility, every inmate there would be in IPC.