George YOUNGER, Plaintiff,

v.

THE CITY OF NEW YORK; New York City Mayor Michael Bloomberg; Police Commissioner Raymond Kelly; Former New York City Mayor Rudolph Gulliani; Retired Police Officer John Ballentyne; Retired Police Officer Paul Johnson; Detective Gregory John, Shield # 7243 (Formerly Known Under Shield # 25755); Police Officer James Piccolo, Shield # 4946; Police Officer Joseph Tennariello, Shield # 6915; Former Police Officer John Coughlin; Former Police Officer Peter Kalfa; Captain David Moskowitz; E.S.U. Sergeant Robert Decandia, Shield # 724; Lieutenant William Brady; and Sergeant John Wallmuller, Shield # 411, Defendants.

No. 03 CV 8985 VM.

United States District Court, S.D. New York.

March 29, 2007.

724

George Younger, E. Elmhurst, NY, pro se.

Mona Vivian Najib, Concepcion A. Montoya, New York City Law Department, New York, NY, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se plaintiff George Younger ("Younger") brought this case against defendants City of New York (the "City"), Mayor Michael Bloomberg ("Bloomberg"), Police Commissioner Raymond Kelly ("Kelly"), former Mayor Rudolph Giuliani ("Giuliani"), and several present and former New York City Police Officers: John Ballentyne ("Ballentyne"), Paul Johnson ("Johnson"),

Gregory John ("John"), James Piccolo ("Piccolo"), Joseph Tennariello ("Tennariello"), John Coughlin ("Coughlin"), Peter Kalfa ("Kalfa"), David Moskowitz ("Moskowitz"), Robert Decandia ("Decandia"), William Brady ("Brady"), and John Wallmuller ("Wallmuller") (collectively, "Defendants"). Younger asserts a number of claims arising out of his arrest by New York City police officers, which took place at his Brooklyn apartment in the early morning hours of January 22, 2002. Younger's complaint includes claims of violations of his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, as well as failure to supervise, negligent hiring and retention, and negligence in the performance of duties. Defendants[1] move for summary judgment on all claims, with the exception of the excessive force claim as to some of the Defendants, which they concede involves disputed questions of fact. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## I.  *BACKGROUND*[2]

In January of 2002, Younger resided at 1155 East 35th Street, Apartment B14, in Brooklyn, New York, with Trevene Currie ("Currie"), his common law wife; Anistasia Younger ("Anistasia"), his two-year-old daughter; Annyus Younger ("Annyus"), his ten-month-old son; and Dejonte Monroe ("Dejonte"), his seven-year-old stepson.

On January 22, 2002, at approximately 3:48 a.m., someone inside Younger's apartment called 911. After the 911 operator answered the call and inquired as to the nature of the emergency, the call was disconnected. The call lasted about ten seconds. On that morning, Younger, Currie, Anistasia, Annyus, and Dejonte were all in the apartment, as was Younger's brother, Armando Younger ("Armando"), who occasionally stayed with Younger. It is uncer-

---

**1.** According to the motion for summary judgment, Giuliani was not served with the summons and First Amended Complaint in this action, despite his being named as a defendant, and he is therefore not included in the motion. Because the arguments made by the moving defendants with regard to lack of personal involvement apply with equal force to Giuliani, the Court will also consider these arguments with respect to him.

Defendants City of New York, Bloomberg, Kelly, and Ballentyne submitted an answer to the amended complaint as an exhibit to the reply memorandum of law in support of the motion for summary judgment. In a footnote in their answer, these defendants state that remaining defendants (Johnson, John, Piccolo, Tennariello, Coughlin, Kalfa, Moskowitz, Decandia, Brady, and Wallmuller) were not served with a copy of the summons and amended complaint. Because those defendants were included in the motion for summary judgment and have not raised a defense based on this alleged lack of service, the Court will not consider that issue in deciding this motion.

**2.** The factual summary that follows derives primarily from the First Amended Complaint ("FAC"); Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mem."); Defendants' Statement Pursuant to Rule 56.1 ("Defs.' 56.1 Statement"); the Declaration of Vivian Najib ("Najib Decl.") and exhibits attached thereto; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opp'n Mem."); Plaintiff's Statement of Facts in Opposition to Defendants' Motion for Partial Summary Judgment Pursuant to Rule 56(e) ("Pl.'s 56(e) Statement") and exhibits attached thereto; Defendants' Reply Memorandum of law in Further Support of Their Motion for Partial Summary Judgment ("Defs.' Reply Mem."); Defendants' Reply to Plaintiff's Statement of Facts in Opposition to Defendants' Motion for Partial Summary Judgment Pursuant to Rule 56(e) ("Defs.' Reply Statement"). Except where specifically referenced, no further citation to these sources will be made.

tain whether Younger had been arguing with Currie that morning. Younger had consumed alcohol that night and was somewhat intoxicated. It remains unclear who initiated the 911 call.

At approximately 3:55 a.m., New York City police officers from the 63rd Precinct arrived at Younger's apartment, having responded to a radio run about the 911 call. The officers knocked on the door and identified themselves, and they report having heard the sounds of arguing and children crying coming from inside the apartment. The officers requested that Younger open the door and allow them to check on the safety of those inside. According to the officers, Younger angrily refused, telling them to "get the fuck away from the door" and that they "ain't coming up in here" without a warrant. (Defs.' 56.1 Statement ¶ 25.) Younger repeatedly told the officers that nobody had called the police. Younger stated in his deposition in this case that he did not call 911 and had no knowledge of anyone else doing so. (*See* Deposition of George Younger, attached as Ex. C to Najib Decl. at 67:25–68:3.) Further angry exchanges between the officers and Younger followed. A police sergeant who was present at the scene placed a telephone call to Younger's apartment, and attempted unsuccessfully to convince Younger to open the door.

At about 4:04 a.m., a second 911 call was initiated from Younger's apartment. During that phone call, Younger argued angrily with the 911 operator, demanding that the officers be ordered to move away from his door. He stated that the officers had no business being at his apartment, that they had no warrant, and that he would not let them in. This call lasted about three minutes.

At approximately 4:17 a.m., defendant Brady, who was a supervising police officer from the 63rd Precinct, requested that of-

ficers from the Emergency Services Unit ("ESU") respond to the location because the officers there were unable to gain entry to the apartment. According to the Defendants, at some point before the ESU officers arrived, Younger stated that he knew his Second Amendment rights and would use them. Younger denies having mentioned the Second Amendment, but he does recall having referred to his rights under the Fourth Amendment.

Upon their arrival at the scene, defendants John and Johnson, both ESU officers, requested that Younger allow them into the apartment. Younger refused. Younger reports that he called the telephone company to inquire whether it could record the sounds in his apartment through his telephone, so that he would have a record of the what the police officers were saying to him. The telephone company did not have that capability, but they gave him the telephone number for the Internal Affairs Bureau ("IAB"). According to Younger, he then called the IAB, and the IAB officer who answered the telephone told him that he did not have to let the officers into his apartment if they did not have a warrant.

Younger claims that the police officers began threatening that if he did not open the door, they were going to hurt somebody. Through his third-floor apartment window, Younger saw a number of police cars and other emergency vehicles. He says that he opened the window and yelled to the officers outside that there were children in the apartment.

The ESU officers removed the peephole from Younger's door. Through that three-inch wide opening, they could see Younger, Currie, and the children.

At 4:56 a.m., a third 911 call was placed from inside Younger's apartment. Younger told the 911 operator that the police

were trying to illegally break into his apartment without a warrant. He stated that he had already lodged a complaint with the IAB. On the audio tape of the 911 call, Younger can be heard arguing with the police, telling them that they cannot come into the apartment and alerting them to the fact that Currie is pregnant. The officers can be heard at the door stating that they will be coming in. Currie also spoke with the 911 operator, telling her that nobody had called 911 from the apartment. The 911 operator told Currie that the officers were there to check on the safety of the children and would break the door down if necessary. A few minutes into the call, the ESU officers can be heard forcibly entering the apartment. Loud noises, unintelligible voices, and crying continue for a number of minutes. Younger can be heard asking if his daughter is okay and complaining about injuries inflicted on him by the officers. The telephone call was disconnected at 5:09 a.m.

Younger alleges that he was beaten by the ESU officers. Specifically, Younger claims that one officer threw him to the ground and handcuffed him, another put his foot on Younger's neck, and multiple other officers kicked Younger repeatedly in the face. He states that he lost consciousness, but that after we awoke he saw that Currie had a swollen eye, a swollen lip, and other bruises. Younger further claims that as he was being led out of his apartment in handcuffs, an officer rammed his head into a wall. He also claims that, once outside the apartment building, an officer literally picked him up by the pants and threw him into the ambulance.

A police report written by defendant Ballentyne states that Younger attempted to punch and kick the officers and flailed

his arms. Younger denies this accusation except that he admits may have "flailed his arms" insofar as he attempted to protect his face.

Younger's children allegedly were also injured during these events. According to Younger, as the ESU officers entered his apartment, they knocked over a crib, which contained Annyus. The crib hit Anistasia and knocked her into a desk. The officers allege that Younger and Currie used Anistasia as a shield.

A pellet rifle (*i.e.*, a BB gun) was found in a rear bedroom of the apartment. Younger claims that it was his brother's gun and that he did not know it was in the house. Younger states that as a convicted felon, he knew he was not allowed to possess a firearm. A police report confirms that the BB gun was "not in Mr. Younger's possession during [the] incident." (Memobook of William Brady from January 22, 2006, attached as Ex. E to Najib Decl., at 83.)

Younger was arrested and charged with three counts of child endangerment, resisting arrest, and obstructing governmental administration. Currie was also arrested, as was Armando, who was found in the bathroom.[3]

On May 30, 2002, Younger pleaded guilty to obstructing governmental administration. He was subsequently sentenced to three months' probation for that offense. On November 14, 2003, Younger filed his complaint in this lawsuit. He filed an amended complaint on January 20, 2006. Younger's First Amended Complaint ("FAC") contains claims of violations of his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, brought pursuant to 42 U.S.C.

---

**3.** Armando allegedly also received injuries to his face following the officers' entry into Younger's apartment.

§§ 1981, 1983, and 1985. The FAC also contains claims of failure to supervise, negligent hiring and retention, and negligence in the performance of duties, as well as claims for punitive damages and attorney's fees. Defendants move for summary judgment on all claims except for Younger's claim of excessive force.

## II. DISCUSSION

### A. LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The moving party bears the burden of proving that no genuine issue of material fact exists or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

In the case of a pro se litigant the Court is instructed to read the pleadings leniently and to construe them to raise "the strongest arguments that they suggest." *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).

### B. YOUNGER'S CLAIMS

Younger's claims under 42 U.S.C. § 1983 (" § 1983") consist of allegations of excessive force in violation of the Eighth and Fourteenth Amendments; false arrest and imprisonment, unlawful entry, and malicious prosecution in violation of the Fourth Amendment; failure to be informed of the nature and cause of the accusation in violation of the Sixth and Fourteenth Amendments; and denial of due process and equal protection of the laws in violation of the Fourteenth Amendment. Younger also makes reference to the First Amendment (*see* FAC ¶ 1), but he does not specify any violation of his rights under it. The Court notes that, based on the substance of Younger's allegations, Younger might have intended a claim based on a theory of First Amendment retaliation.

Before analyzing these claims, the Court notes that Younger also brought claims for negligent supervision, negligent hiring and retention, and negligence in the performance of duties. Defendants argue that any claims brought under New York State law are procedurally barred by Younger's failure to (1) file a notice of claim within ninety days after the incident giving rise to the claim and (2) commence the action with a year and ninety-days from the date on which the cause of action accrues, as required by N.Y. Gen. Mun. L. §§ 50–e and 50–i. Younger responds that he is not alleging any state claims, and he admits that he did not file a notice of claim. Accordingly, to the extent that Younger's negligence claims represent state claims, they must be dismissed. Because Younger asserts that they are not state claims, the Court will interpret them, to the extent appropriate, as theories upon which Younger attempts to establish supervisory liability with respect to certain defendants for his § 1983 claims.

The Defendants argue that Younger's First Amendment claim, his Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution, his Sixth Amendment claim for failure to be informed of the nature and cause of the accusation, and his Fourteenth Amendment due process and equal protection claims are all barred by his conviction pursuant to a guilty plea. In *Heck v. Humphrey*, the Supreme Court declared:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See also Cameron v. Fogarty*, 806 F.2d 380, 386–89 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *Subgidio v. Graiani*, 2006 WL 648229, *10 (S.D.N.Y. March 16, 2006) (holding that *Heck* applies to claims of malicious prosecution, false arrest, and denial of procedural due process); *Duamutef v. Morris*, 956 F.Supp. 1112, 1116 (S.D.N.Y.1997) (dismissing claims of false arrest, malicious prosecution, First Amendment retaliation, perjury, and denial of equal protection). Younger concedes

this point. Because each of these claims would render invalid Younger's conviction for obstructing governmental administration, the Court finds that they are barred by that conviction.

With respect to Younger's claim for unlawful entry, Defendants argue that exigent circumstances existed that justified the officers' entry into Younger's apartment without a warrant. *See Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."). Specifically, Defendants argue that the officers were responding to a 911 call initiated from inside Younger's apartment, that they could hear screaming and crying coming from inside the apartment, and that they reasonably believed that somebody in the apartment might be in need of emergency assistance. Younger does not argue this point. Because there is no genuine issue of material fact as to the existence of exigent circumstances justifying the officers entry into Younger's apartment, the Court dismisses this claim.

■ Younger's allegation of excessive force was brought as a claim under the Eighth and Fourteenth Amendments. Defendants correctly point out that the Eighth Amendment applies only to claims of cruel and unusual punishment imposed on an individual after he or she has been convicted of a crime. *See Whitley v. Albers*, 475 U.S. 312, 318–19, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied

with the constitutional guarantees traditionally associated with criminal prosecutions.' ") (*quoting Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). Accordingly, a claim that police officers used excessive force during an arrest must be brought under the Fourth and Fourteen Amendments, and the Court will therefore consider Younger's allegation of excessive force in that context.

Defendants admit that there are factual disputes surrounding the force used in effecting Younger's arrest, and they do not move for summary judgment on Younger's excessive force claim, at least with respect to certain of the police officers. (*See* Defs.' Mem. at 3 n.2.) Defendants do argue, however, that the claim should be dismissed as against defendants Bloomberg, Kelly, Ballantyne, Moskowitz, Brady, and Wallmuller on the grounds that these defendants were not personally involved in Younger's apprehension and that supervisory liability is not warranted. They also contend that the claim should be dismissed as against the City because Younger has not established a basis for municipal liability. The central question for the Court with respect to Younger's claim of excessive force, then, is which of the defendants may be held liable for the alleged excessive force used by the arresting officers.

## C. *PERSONAL INVOLVEMENT*

▆▆▆▆ It is well settled in the Second Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (*quoting Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973) ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of respondeat

superior does not suffice and a showing of some personal responsibility of the defendant is required."). "Personal involvement," however, is not limited to direct participation in the deprivation of rights at issue. A defendant who occupies a supervisory position may be "personally involved" in a deprivation of constitutional rights in several ways, including: (1) directly participated in the infraction; (2) after learning of the violation, failing to remedy the wrong; (3) creating a policy or custom under which unconstitutional practices occurred, or allowing such a policy or custom to continue; (4) being grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) demonstrating "gross negligence" or "deliberate indifference" to the constitutional rights of an individual by having actual or constructive notice of unconstitutional practices and failing to act. *See Wright*, 21 F.3d at 501 (*citing Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986); *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983)).

▆▆▆▆ Defendants argue that Younger's excessive force claim should be dismissed as against defendants Bloomberg, Kelly, Ballentyne, Moskowitz, Decandia, Brady, and Wallmuller because there is no evidence of their personal involvement. On the date of the arrest, Bloomberg was the Mayor of the City of New York, Kelly was the Commissioner of the New York City Police Department, Ballentyne and Wallmuller were Police Officers at the 63rd Precinct, Moskowitz was a Duty Captain at the 63rd Precinct, Decandia was the ESU City Supervisor, and Brady was a Patrol Supervisor at the 63rd Precinct. (*See* Najib Decl. ¶¶ 6–11.)

Younger alleges that Ballentyne, Moskowitz, Decandia, and Brady were supervising officers, were present at the scene of the arrest, "and failed to act while plain-

tiff was begin beaten." (Pl.'s 56(e) Statement ¶ 63.) Younger further alleges that Decandia "participated in the attack." (*Id.*) A police report drafted by Brady suggests that he personally observed Younger being apprehended in his apartment. (*See* Unusual Incident Report, attached as Ex. F to Najib Decl.) Brady's report also lists Ballentyne, Moskowitz, Decandia, and Wallmuller as being present at the scene, but it does not indicate whether they were present during the arrest or otherwise had knowledge of the alleged excessive force. (*See id.*) Ballentyne signed the complaint in Younger's criminal case in which he stated that he personally observed Younger's apprehension in the apartment. (*See* Criminal Court Complaint, attached as Ex. L to Najib Decl.)

Younger also alleges that even before the officers forcibly entered his apartment, they made verbal threats to him, warning him that when they came in, they were "going to hurt someone." (*See* FAC ¶ 12; Opp'n Mem. at 9.) Defendants deny this allegation, and they contend that the audio tape of the 911 calls makes clear that the officers did not make any threats. However, the Court finds the audio tape to be inconclusive on this point because the officers' voices come across as muffled and unintelligible and because the tape captures only a fraction of the time that the officers were at Younger's door.

Defendants additionally contend that the officers would not have had time to intervene because any use of force against Younger took place in a matter of seconds. The audio tape of the third 911 call, however, suggests that it might have taken minutes, during which time there certainly would have been an opportunity for an officer to intervene.

█ The evidence now before the Court leaves substantial uncertainty with respect to whether defendants Ballentyne, Moskowitz, Decandia, Brady, and Wallmuller where in a position, during Younger's arrest, to intervene and attempt to stop any alleged use of excessive force. The law is clear that any of them, whether or not they held a supervisory position at the time, would have had a duty to intervene for that purpose. As a court in this district recently stated, a "police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y. 2003) (*citing Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)); *see also Fischl v. Armitage*, 128 F.3d 50, 57 (2d Cir.1997) (reversing grant of summary judgment for defendant based on evidence that defendant was in the vicinity of an assault on plaintiff and failed to intervene); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation ... takes place in his presence, the officer is directly liable under Section 1983.") (*quoting Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)). Furthermore, a "plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys*, 275 F.Supp.2d at 474. Accordingly, the Court finds that genuine issues of material fact exist with respect to the allegations of excessive force against defendants Ballentyne, Moskowitz, Decandia, Brady, and

Wallmuller, and it denies summary judgment with respect to those individuals.

■ With respect to defendants Bloomberg, Giuliani, and Kelly, Younger does not adequately allege personal involvement. Instead, he merely offers conclusory allegations that they failed to adequately train, supervise, or discipline the police officer defendants; that they were negligent in hiring and retaining the police officer defendants; that they failed to enforce the laws; that they were generally negligent in the in the performance of their duties; and that they exhibited recklessness with regard for the rights of the public. Younger presents no evidence to support these claims. "[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987). Accordingly, the excessive force claim must be dismissed as against Bloomberg, Giuliani, and Kelly.

### D. *MUNICIPAL LIABILITY*

■ A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, it may be held liable only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* A "persistent and widespread" practice of government officials could also be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Furthermore, where a persistent practice is alleged to exist only among subordinate employees, the subordinates' actions "must

be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir.1992).

■ Accordingly, in order to establish liability against the City for the excessive force he alleges was employed in effecting his apprehension, Younger must establish that there was a "persistent and widespread" practice of the use of excessive force by police officers that was so manifest as to imply deliberate indifference on the part of the City to the risks created by that practice. Younger fails to do so. Beyond the broad allegations of his pleadings, Younger presents no evidentiary support for the existence of such a municipal policy, custom or practice, nor any indication of how any such City conduct resulted in the harms Younger suffered in connection with his arrest. The existence of a municipal policy or practice entailing deprivations of constitutional rights cannot be grounded solely on the conclusory assertions of the plaintiff. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Nor can it be grounded on anecdotal evidence of other alleged instances of excessive force. Absent such sufficient evidence, Younger's claim against the City must be dismissed. *See Brown v. City of New York*, 306 F.Supp.2d 473, 477–78 (S.D.N.Y.2004); *Carnegie v. Miller*, 811 F.Supp. 907, 912–13 (S.D.N.Y.1993).

### E. *CLAIMS UNDER 42 U.S.C. §§ 1981 AND 1985*

■ The FAC makes reference to civil rights claims under 42 U.S.C. § 1981 (" § 1981") and 42 U.S.C. § 1985 (" § 1985"). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of

race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute...." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Younger does not allege that Defendants had an intent to discriminate against him on the basis of race nor that an activity enumerated in the statute was involved. Therefore, his § 1981 claim must be dismissed.

■■■ Under § 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Id.* at 1088 (*citing United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (*quoting Scott,* 463 U.S. at 829, 103 S.Ct. 3352). Because Younger does not allege that the Defendants were motivated by racial animus, his § 1985 must be dismissed.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion for summary judgment (Docket No. 46) of defendants City of New York, Michael Bloomberg ("Bloomberg"), Raymond Kelly ("Kelly"), John Ballentyne ("Ballentyne"), Paul Johnson ("Johnson"), Gregory John ("John"), James Piccolo ("Piccolo"), Joseph Tennariello ("Tennariello"), John Coughlin ("Coughlin"), Peter Kalfa ("Kalfa"), David Moskowitz ("Moskowitz"), Robert Decandia ("Decandia"), William Brady ("Brady"), and John Wallmuller ("Wallmuller") (collectively, "Defendants") is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the First Amended Complaint (Docket No. 26) of plaintiff George Younger ("Younger") is dismissed as to all claims with the exception of the excessive force claim, brought pursuant to 42 U.S.C. § 1983, as to defendants Ballentyne, Johnson, John, Piccolo, Tennariello, Coughlin, Kalfa, Moskowitz, Decandia, Brady, and Walmuller; and it is further

**ORDERED** that the First Amended Complaint (Docket No. 26) of plaintiff Younger is dismissed in its entirety as to defendants City of New York, Bloomberg, Kelly, and Giuliani.

SO ORDERED.