**Phillip JEAN–LAURENT, Plaintiff,**

v.

**C.O. Gorden WILKINSON et al., Defendants.**

**No. 05 Civ 0583(VM).**

United States District Court, S.D. New York.

March 24, 2008.

Sarah Beth Evans, NYC Law Dept., Office of Corporation Counsel, New York City, for defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Phillip Jean–Laurent ("Jean–Laurent") brought this action pro se, pur-

suant to 42 U.S.C. §§ 1983 (" § 1983"), 1985 (" § 1985"), 1986 (" § 1986"), and 2000CC–1 (" § 2000cc–1"), claiming that defendants Corrections Officers Gorden Wilkinson ("Wilkinson"), Marcus Robinson ("Robinson"), Pedro Rodriguez ("Rodriguez"), Deidra Colds ("Colds") and Terry Fowler ("Fowler"); Captains Donald McCarthy ("McCarthy"), Luis Matos ("Matos"), Dominick Martinez ("Martinez"), and Debra Burrows ("Burrows"); Deputy Ronald Jorgenson ("Jorgenson"); Warden Patrick Walsh ("Walsh"); John Doe ("Doe"); and New York City Department of Correction Commissioner Martin Horn ("Horn") (collectively, "Defendants")[1], violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Specifically, he alleges unlawful strip search, use of excessive force, failure to supervise, failure to intervene, conspiracy, and municipal liability. Jean–Laurent claims that Defendants either carried out, observed, or approved the unconstitutional acts. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), arguing that (1) the claims of conspiracy, excessive force, unlawful strip search, failure to supervise, failure to intervene, and municipal liability fail as a matter of law; (2) the claims against Horn must be dismissed for lack of personal involvement; and (3) Defendants

are entitled to qualified immunity. For the reasons stated below, Defendants' motion is DENIED in part and GRANTED in part.

## I.  BACKGROUND[2]

This action arises out a series of events that occurred at the George Motchan Detention Center ("Motchan") in New York City on the morning of June 16, 2004, when corrections officers searched the cells in Jean–Laurent's housing unit in response to recent stabbings within the prison. Jean–Laurent alleges that McCarthy led the search of Jean–Laurent's cell, telling his fellow officers to "shake him down good and take all his extra belongings." (Am.Compl.¶ 19.) Jean–Laurent was subject to a routine strip search in his cell, and he was instructed to stand across from his cell to observe the search of his cell and to hold his mattress off the floor. Jean–Laurent refused to hold his mattress off the floor, stating that he had a spinal abnormality. When Jean–Laurent could not produce a medical note, McCarthy summoned other officers to escort Jean–Laurent into a hallway and order him to kneel. Although it is unclear from the record when Jean–Laurent was handcuffed and for how long, Jean–Laurent contends that he was "manacled to the rear" while

1. By Decision and Order dated July 6, 2006 ("2006 Decision"), the Court dismissed all claims against McCarthy, Martinez, Colds, Flower, and Walsh. *See Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 328 (S.D.N.Y. 2006). Jean–Laurent has since amended the complaint for the second time and now includes allegations that Martinez was present during the second strip search; therefore, the Court will consider Jean–Laurent's claims against Martinez arising from Martinez's presence during the second strip search.

2. The factual summary that follows derives primarily from the Second and Final Amended Complaint, dated April 2, 2007 ("Am.

Compl."); Defendants' Statement Pursuant to Local Civil Rule 56.1, dated January 7, 2008 ("Defts.' 56.1"); Plaintiff's Response to Defs.' 56.1, dated February 11, 2008; Plaintiff's Affirmation in Opposition to Defendants' Motion for Summary Judgment, dated February 11, 2008; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated February 11, 2008 ("Pl.'s Mem."); and Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated March 13, 2008. Except where specifically referenced, no further citation to these sources will be made.

he was kneeling in the hallway. (Pl.'s Mem. 5.)

Two other inmates were then handcuffed and escorted into the same hallway as Jean–Laurent and ordered to kneel. According to Jean–Laurent, when one of the other inmates ("Inmate # 1") refused to comply because he claimed that he had a knee injury, Jorgensen told an officer to take Inmate # 1 into the stairwell and "break the inmate's leg if necessary." (Am.Compl.¶ 23.) Jean–Laurent turned and saw Inmate # 1 being forcibly subdued in the stairwell. Jean–Laurent also alleges that Wilkinson then began verbally abusing him for looking into the stairwell, and that Wilkinson forced Jean–Laurent to his feet by grabbing his collar and slammed him against the wall in the presence of Jorgensen, Burrows, Matos, Fowler and Colds.

Matos then told Wilkinson to take Jean–Laurent into the stairwell and to instruct Jean–Laurent to strip. Jean–Laurent claims that Wilkinson, Matos, Jorgensen, Martinez, Rodriguez, Robinson, and Doe were present while Jean–Laurent removed his clothing. He also claims that Burrows exited the stairwell when Jean–Laurent began removing his pants. Jean–Laurent alleges that Wilkinson and Matos continued to verbally abuse him as he was naked, and Wilkinson struck him several times in the face and hemmed him against the wall by his neck. When permitted to dress and return to his cell, Jean–Laurent asserts that he found his clothing and legal papers ruined.

## II.  DISCUSSION

### A.  *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins., Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists or that by reason of the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994).

■ In the case of a pro se litigant a court is instructed to read the pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation and quotation marks omitted). However, "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (citation and quotation marks omitted).

### B.  *CONSPIRACY*

■ To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002); *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Thus, a plaintiff must show that "defendants 'acted in a willful manner, culminating in an agreement, un-

derstanding or "meeting of the minds," that violated [his] rights, privileges or immunities secured by the Constitution or federal courts.'" *Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998) (*quoting Hameed v. Pundt,* 964 F.Supp. 836, 839 (S.D.N.Y.1997)); *see Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000). " '[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.'" *Ciambriello,* 292 F.3d at 325 (*quoting Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). However, conspiracies are "by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." Pangburn, 200 F.3d at 72 (citation and quotation marks omitted).

Jean–Laurent asserts that Jorgensen, Matos, Wilkinson, Martinez, Burrows, Rodriguez, Robinson and Doe (collectively, the "Alleged Conspirators") "conspired to violate his constitutional rights" and "failed to prevent a conspiracy to violate his constitutional rights." (Am.Compl.¶¶ 40–41.) However, Jean–Laurent has proffered no evidence to support that there was any agreement or "meeting of the minds" between the Alleged Conspirators to violate his constitutional rights. *Hameed,* 964 F.Supp. at 839. Since "[a]n essential element in a claim of conspiracy ... is an agreement to do so among the alleged co-conspirators," *National Congress for Puerto Rican Rights v. City of New York,* 75 F.Supp.2d 154, 168 (S.D.N.Y.1999), Jean–Laurent's conclusory assertions of a conspiratorial agreement cannot withstand summary judgment. *See Shabazz,* 994 F.Supp. at 467; *Bussey v. Phillips,* 419 F.Supp.2d 569, 587 (S.D.N.Y.2006); *Ahlers*

*v. Carrillo,* No. 94 Civ. 7945, 1997 WL 167049, at *4 (S.D.N.Y. Apr.9, 1997). Accordingly, Jean–Laurent's conspiracy claim under § 1983 against the Alleged Conspirators is dismissed. Because Jean–Laurent cannot establish a conspiracy claim under § 1983, for the same reasons his conspiracy claims under §§ 1985 and 1986 cannot survive a summary judgment motion. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993); *Dwares v. City of New York,* 985 F.2d 94, 101 (2d Cir.1993); *Younger v. City of New York,* 480 F.Supp.2d 723, 734 (S.D.N.Y. 2007). Accordingly, Jean–Laurent's claims against the Alleged Conspirators under §§ 1985 and 1986 are dismissed.

## B. *EXCESSIVE FORCE*

■ Jean–Laurent alleges that Wilkinson used excessive force in violation of his constitutional rights under the Due Process Clause of the Fourteenth Amendment[3]. Defendants counter that any force allegedly used by Wilkinson was directly related to his duty to maintain order, discipline and security within the prison, and that Wilkinson's alleged acts do not rise to the level of a constitutional violation because they involved nothing more than de minimis use of force.

■ "The core judicial inquiry" for claims of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To establish a constitutional claim of excessive force, "two conditions, one subjective and the other objective, ... must be met." *Walsh,* 194 F.3d at 49 (*citing Hudson,* 503 U.S. at 20, 112 S.Ct. 995).

**3.** The Second Circuit has held that the same standard of law applies to excessive force claims brought under the Fourteenth Amendment as applies to such claims brought under the Eighth Amendment. *See United States v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999).

■■ The subjective condition is satisfied if the defendant has a "sufficiently culpable state of mind ... shown by actions characterized by wantonness." *Id.* (citations and quotation marks omitted). In determining whether the use of force was wanton, a court evaluates "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994) (citations and quotation marks omitted); *see also Walsh,* 194 F.3d at 53 (*citing Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

■■ The objective condition is satisfied if it is "shown that the deprivation alleged is objectively sufficiently serious or harmful enough." *Walsh,* 194 F.3d at 50 (*citing Hudson,* 503 U.S. at 8, 112 S.Ct. 995). This condition is satisfied "even if the victim does not suffer serious or significant injury provided that the amount of force used is more than de minimis, or involves force that is repugnant to the conscience of mankind." *Id.* (citations and quotation marks omitted).

The Court is not persuaded by Defendants' argument that any force allegedly used by Wilkinson was directly related to his duty to maintain order, discipline and security within the prison. While the Court understands why Defendants would implement heightened security measures due to the then recent stabbings within Motchan, the Court is not convinced that striking Jean–Laurent in the face several times while he was standing naked in a stairwell[4] surrounded by several officers, absent any indication that Jean–Laurent posed a threat, was within with Defendant's asserted good-faith effort to maintain or restore discipline.

■■ In addition, Jean–Laurent has proffered sufficient evidence satisfying the subjective condition. Wilkinson's alleged use of force accompanied by verbal abuse occurred during the second strip search. A reasonable juror could conclude that Wilkinson's conduct during the second strip search was wanton and malicious because there was no "need for the application of force used" and no "threat reasonably perceived by [Wilkinson]" when, at the time of the complained of actions, Jean–Laurent was naked, confined to the stairwell, surrounded by several officers. *Davidson,* 32 F.3d at 30. Therefore, a rational jury could find that the verbal and physical abuse Wilkinson allegedly inflicted on Jean–Laurent was designed, not reasonably related to a security need, but to harass and intimidate Jean–Laurent. *See Covino,* 967 F.2d at 80.

■■ Moreover, Jean–Laurent has proffered sufficient evidence satisfying the objective condition. Jean–Laurent alleges that Wilkinson, without reason or provocation, struck him several times across his face, causing swelling on the left side of his face, a cut to the inside of his mouth, his ear to bleed, and hearing impairment.

■■ Defendants dispute Jean–Laurent's claims and assert that the force allegedly used by Wilkinson was de minimus, any injuries Jean–Laurent suffered were not severe, the cut inside Jean–Laurent's mouth were minor, and Jean–Laurent's alleged hearing impairment was not due to the alleged force used by Wilkinson. Defendants also assert that Jean–Laurent did not seek medical attention for the alleged injuries to his ear until 2005, which was over six months after the events giving rise to the instant action and after

---

4. It is unclear from the record whether Jean– Laurent was handcuffed at this time.

Jean–Laurent was involved in a fight with another inmate and may have suffered injuries at that time.

Viewing all the facts of the record in a light most favorable to Jean–Laurent, the Court finds that a reasonable juror could conclude that Wilkinson repeatedly struck Jean–Laurent without provocation and with such force as to cause facial bruising, his ear to bleed and hearing impairment, and that such actions were "sufficiently serious or harmful enough" to satisfy the objective condition. *See Walsh,* 194 F.3d at 50 *(citing Hudson,* 503 U.S. at 8, 112 S.Ct. 995). Therefore, there are genuine issues of material facts existing, regarding the amount of force that Wilkinson used and the severity of the injuries Jean–Laurent suffered, making the granting of summary judgment inappropriate. *See, e.g., Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999) (finding that "dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him")Accordingly, Wilkinson's motion for summary judgment with respect to Jean–Laurent's claim of use of excessive force in violation of the Fourteenth Amendment is denied.

## C. *UNLAWFUL STRIP SEARCH*

■ The Fourth Amendment requires all searches conducted within a prison, including strip searches, to be reasonable. *See Hodges v. Stanley,* 712 F.2d 34, 35–36 (2d Cir.1983) *(citing Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). In determining whether a particular strip search is reasonable, the Court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559, 99 S.Ct. 1861.

■ Strip searches generally have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal. *See, e.g., id.; Covino v. Patrissi,* 967 F.2d 73, 79 (2d Cir.1992); *Michenfelder v. Sumner,* 860 F.2d 328, 332–33 (9th Cir. 1988). A strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. *See, e.g., Covino,* 967 F.2d at 80 *(citing Hurley v. Ward,* 584 F.2d 609 (2d Cir.1978)); *Hodges,* 712 F.2d at 35–36; *Bono v. Saxbe,* 620 F.2d 609, 617 (7th Cir.1980).

■ In the 2006 Decision, this Court concluded that Jean–Laurent's first strip search was conducted inside his cell as part of a larger security response to stabbings within Motcham, therefore, Jean–Laurent could not sustain a § 1983 claim for the first strip search. However, the Court held that Jean–Laurent sufficiently alleged that the second strip search conducted in the stairwell was unreasonable and thus that Wilkinson, who performed the search, and Matos, who ordered the search, violated Jean–Laurent's Fourth Amendment right to protection against unreasonable searches. The Court reasoned that, because Jean–Laurent alleged that he was under constant supervision by Defendants from the time of the first strip search to the second strip search and that he had no opportunity to acquire contraband during the supervised period, there was no legitimate penological purpose for the second strip search. Moreover, the Court noted that the verbal and physical abuse that allegedly accompanied the second strip search could support a reasonable finding that the search was designed to harass and intimidate.

Defendants now contend that Jean–Laurent was not under continuous supervision

between the time of the first strip search and the second strip search, and that Jean–Laurent was in close proximity to other inmates, resulting in a legitimate penological purpose for the second strip search. Specifically, Defendants assert that after the first strip search, the officer who escorted Jean–Laurent from his cell to the hallway left Jean–Laurent kneeling on the floor and that two other inmates were then brought to the same hallway area and instructed to kneel down. Because Jean–Laurent was in close proximity to other inmates and could have acquired contraband from those inmates, Defendants allege that he was ordered to strip in the stairwell. Defendants also allege that Jean–Laurent was ordered to strip the second time and not searched.

Jean–Laurent argues that after the first strip search, while he was in the hallway, he was "in the vicinity of other inmates," but that he was "manacled to the rear and placed on his knees at a distance apart from the other inmates that [he] could not have reasonably acquired anything from them." (Pl.'s Mem. 5.)

Genuine issues of material fact exist regarding whether Jean–Laurent was under constant supervision by Defendants and to what proximity he was to the other inmates so as to determine whether he could have acquired contraband. Accordingly, Defendants' motion for summary judgment with respect to Jean–Laurent's claim that Wilkinson and Matos violated his Fourth Amendment right to protection from unreasonable search is denied. *See Marria v. Broaddus* 200 F.Supp.2d 280, 297 (S.D.N.Y.2002); *Show v. Patterson,* 955 F.Supp. 182, 190–91 (S.D.N.Y.1997).

## D. *FAILURE TO SUPERVISE*

■ It is settled law that supervisors cannot be held liable in a § 1983 suit solely on a theory of respondeat superior. *See Richardson v. Goord,* 347 F.3d 431,

435 (2d Cir.2003) (*citing Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003)). Rather, a plaintiff in a § 1983 action must show that the supervisor was personally involved in a constitutional violation by either: (1) directly participating in the violation; (2) failing to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom and policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failing to act on information indicating that unconstitutional acts are occurring. *See Colon v. Coughlin.* 58 F.3d 865, 873 (2d Cir.1995) (*citing Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

■ Jean–Laurent alleges that Jorgensen, Matos, Martinez and Burrows (the "Supervisors") "were supervising officers over defendant Wilkinson and owed a duty to plaintiff to prevent and protect him from the conduct [ ] of defendant Wilkinson, and their inaction amounted to a violation" of his constitutional rights. (Am. Compl.¶ 36.) Viewing Jean–Laurent's pleadings "liberally" to "interpret them to raise the strongest arguments that they suggest," *McPherson,* 174 F.3d at 280, it appears that Jean–Laurent is claiming that Jorgensen and Burrows were personally involved because they were grossly negligent in supervising Wilkinson. *See Colon,* 58 F.3d at 873.

Jorgensen and Burrows assert that they were not in the stairwell at the time of the alleged use of excessive force. (*See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss, dated January 7, 2008 ("Defs.' Mem.") at 16.) However, even if Jorgensen and Burrows were not present in the stairwell at the time of the alleged use of excessive force, it does not relieve them from liability. Their argument fails to consider the totality of the

circumstances that led to the second strip search and alleged use of excessive force.

Jean–Laurent alleges that Burrows was in the stairwell when he was ordered to strip and exited when Jean–Laurent began removing his pants. In addition, Jean–Laurent claims that Jorgensen and Burrows were "at or in very near proximity" of the staircase and knew that Jean–Laurent's constitutional rights were allegedly being violated by an inferior officer. (Pl.'s Mem. 7–8.) Specifically, Jean–Laurent claims that just prior to being escorted into the stairwell, Jorgensen instructed an officer to take Inmate # 1, who was handcuffed and escorted to the hallway with Jean–Laurent, into a stairwell and "break the inmate's leg if necessary to make him comply with the order given." (Am. Compl. ¶ 23.) Jean–Laurent also claims that Jorgensen and Burrows heard inmate # 1 "screaming very loudly for mercy." (Pl's Mem. 7.) Jean–Laurent alleges that, when he looked into the stairwell to observe the incident, Wilkinson slammed him against the wall and verbally abused him as Jorgensen, Burrows and other officers observed. At that point, according to Jean–Laurent, Matos told Wilkinson that Jean–Laurent "thinks he's tough" and instructed Wilkinson to take him "into the staircase and see how tough he thinks he really is." (Am.Compl. ¶ 27.)

A reasonable juror could conclude that when Wilkinson took Jean–Laurent into the stairwell, Burrows and Jorgensen knew or should have known there was a probability that it would result in a violation of Jean–Laurent's constitutional rights, including the use of excessive force, creating a material issue of fact. *See Wright*, 21 F.3d at 501. Accordingly, the motion for summary judgment with respect to Jean–Laurent's claim against Jorgensen and Burrows for failure to supervise is denied.

Matos and Martinez do not contest that they were present during the second strip search and alleged use of excessive force. Nor does Matos dispute that he ordered the second strip search. Jean–Laurent also alleges that Matos verbally abused Jean–Laurent while he was naked in the stairwell. Since Matos and Martinez stood by and observed as Wilkinson, a junior officer, allegedly violated Jean–Laurent's constitutional rights, a reasonable juror could conclude that they were grossly negligent in supervising Wilkinson. *See id.* Accordingly, the motion for summary judgment with respect to Jean–Laurent's claim against Matos and Martinez for failure to supervise is denied.

### E. *FAILURE TO INTERVENE*

Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (citations omitted). Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Id.; McLaurin v. New Rochelle Police Officers*, 373 F.Supp.2d 385, 395 (S.D.N.Y.2005) (*citing Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir.1997)). However, "a police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *McLaurin*, 373 F.Supp.2d at 395 (*quoting Ricciuti*, 124 F.3d at 129).

Jean–Laurent alleges that Rodriguez, Robinson, and Doe (the "Offi-

cers") observed the second strip search and the alleged use of excessive force, and that their failure to intervene and stop the incidents violates § 1983. The Officers counter that they "had no reasonable opportunity to intervene to stop the alleged incident of excessive force." (Defs.' Mem. at 16.) While the Officers are correct that if there is no reasonable opportunity for a defendant to intervene because the episode of excessive force is not of sufficient duration a court may not impose liability under § 1983, *see O'Neill,* 839 F.2d at 11–12, that is not the case here. As discussed above, this argument fails to consider all the alleged unconstitutional conduct by Defendants. In the 2006 Decision, the Court determined that Jean–Laurent's pleadings adequately demonstrated that the duration of the second strip search was of sufficient duration that officers who were present had the opportunity to intervene. In addition, the Officers do not contest that they did nothing to stop the second strip search or alleged use of excessive force.

Although a prisoner's right to be free from unreasonable searches or excessive force by prison officials is clearly an established constitutional right, *see Covino,* 967 F.2d at 80; *Pierre–Antoine v. City of New York,* No. 04 Civ. 6987, 2006 WL 1292076, at *6 (S.D.N.Y. May 9, 2006), there remains a general issue of material fact as to whether Jean–Laurent's constitutional rights were violated during the second strip search and alleged use of excessive force, and whether a reasonable person in the Officers' position would know that Jean–Laurent's constitutional rights were being violated. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d cir.1994) (*citing See O'Neill,* 839 F.2d at 11–12). Accordingly, the motion for summary judgment with respect to Jean–Laurent's claim against the Officers for failure to intervene is denied.

## F. *LACK OF PERSONAL INVOLVEMENT*

As discussed above, supervisors cannot be held liable in a § 1983 suit solely on a theory of respondeat superior. *See Richardson,* 347 F.3d at 435. However, under *Colon,* a supervisor can be held liable under any of the five enumerated categories of personal involvement. *See Colon,* 58 F.3d at 873. Jean–Laurent alleges that Horn violated his constitutional rights by "fail[ing] to adequately supervise his officers" and "maintain[ing] a custom practice that authorizes the use of excessive force and offensive strip searching." (Am.Compl.¶ 42.) Arguably, Jean–Laurent is claiming that Horn is liable pursuant to *Colon* 's third and forth categories. *See Colon,* 58 F.3d at 873. However, to survive summary judgment, Jean–Laurent's allegations must be supported by specific facts. *See id.*

The Amended Complaint sets forth no facts, nor has Jean–Laurent produced any supporting evidence in response to the instant motion, demonstrating that Horn either created any policy or custom which unconstitutional acts occurred or allowed the continuation of such a policy, or that Horn was grossly negligent in supervising the defendants alleged to have committed any unconstitutional acts. "The bare fact that [Horn] occupies a high position in the New York prison hierarchy is insufficient to sustain [Jean–Laurent's] claim." *Id.* at 874 (citations omitted). Accordingly, Jean–Laurent's claims against Horn must be dismissed.

## G. *MUNICIPAL LIABILITY*

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, it may be held liable only

"when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* A "persistent and widespread" practice of government officials could also be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018 (*quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Furthermore, where a persistent practice is alleged to exist only among subordinate employees, the subordinates' actions "must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992).

■ Jean–Laurent alleges municipal liability. Specifically, he alleges that Horn,[5] "through his officers, and by failure to adequately supervise, maintained a custom and practice that authorizes the use of excess force and offensive strip searching." (Am.Compl.¶ 42). Therefore, in order to establish municipal liability for the excessive force and offensive strip search he alleges, Jean–Laurent must establish that there was a "persistent and widespread" practice of the use of excessive force and offensive strip searching by officers that was so manifest as to imply deliberate indifference on the part of the City of New York to the risks created by that practice. Jean–Laurent has not established any such practice. Beyond the broad allegations of his pleadings, Jean–Laurent presents no evidentiary support for the existence of such a municipal policy, custom or practice. The existence of a municipal policy

or practice entailing deprivations of constitutional rights cannot be grounded solely on the conclusory assertions of the plaintiff. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Younger,* 480 F.Supp.2d at 733. Absent such sufficient admissible evidence, Jean–Laurent's claim for municipal liability cannot survive a motion for summary judgment. *See id.; Brown v. City of New York,* 306 F.Supp.2d 473, 477–78 (S.D.N.Y. 2004); *Carnegie v. Miller,* 811 F.Supp. 907, 912–13 (S.D.N.Y.1993). Accordingly, Jean–Laurent's claim of municipal liability against Horn is dismissed.

## H.  *QUALIFIED IMMUNITY*

■ The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Anderson v. Recore,* 446 F.3d at 333; *Morris–Hayes v. Board. of Educ.,* 423 F.3d 153, 158 (2d Cir.2005); *Ayers v. Ryan,* 152 F.3d 77, 82 (2d Cir.1998). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Recore,* 317 F.3d at 197; *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Summary judgment may be granted on this ground if the defendant sufficiently

---

5. Although Jean–Laurent does not name the City of New York as a defendant, he claims municipal liability against Horn. (*See* Am. Compl. ¶ 42.). However, it is unclear in what capacity Jean–Laurent is suing Horn because municipal liability imposes liability on gov-

ernment entities, not individuals. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018. To the extent this claim is against Horn in his individual capacity, the Court dismissed all claims against him for lack of personal involvement. *See supra* Part II. F.

shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it. *See Ayers,* 152 F.3d at 82.

■■■ The Second Circuit has explained that

if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances ... Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.

*Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995) (citation and quotation marks omitted). Qualified immunity is an affirmative defense, thus the "defendants bear the burden of showing that the challenged acts were objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti,* 123 F.3d 75, 78 (2d Cir.1997) (citation omitted).

■■■ Since the right of a prisoner to be free from unreasonable search and use of excessive force is clearly established, *see Covino,* 967 F.2d at 80, *Pierre–Antoine,* 2006 WL 1292076, at *6, Defendants, in this case, must show that it was "objectively reasonable" for them to believe their conduct did not violate Jean–Laurent's constitutional rights. *See Ayers,* 152 F.3d at 82. However, dismissal on the basis of a qualified immunity defense is not appropriate where there are facts in dispute that are material to a determination of reasonableness. *See Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999); *Lennon,* 66 F.3d at 421.

Here, material issues of fact exist concerning the second strip search and the alleged use of excessive force that are material to a determination of reasonableness. Such issues include the reasonableness of the second strip search, the amount of force used by Wilkinson, the extent of the injuries suffered by Jean–Laurent, and which particular Defendants knew or should have known of the alleged unconstitutional conduct. Therefore, Defendants' motion for summary judgment against Jean–Laurent's claims on qualified immunity grounds is denied. *See Lennon,* 66 F.3d at 421; *Kee v. Hasty,* No. 01 Civ. 2123, 2004 WL 807071, at *19 (S.D.N.Y. April 14, 2004).

## III.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 98) of defendants Gorden Wilkinson ("Wilkinson"), Luis Matos ("Matos"), Dominick Martinez ("Martinez"), Debra Burrows ("Burrows"), Pedro Rodriguez ("Rodriguez"), Marcus Robinson ("Robinson"), Ronald Jorgensen ("Jorgensen"), and John Doe ("Doe") for summary judgment is **GRANTED** dismissing plaintiff Phillip Jean–Laurent's ("Jean–Laurent") conspiracy claims brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1986; and it is further

**ORDERED** that the motion (Docket No. 98) of defendant Wilkinson for summary judgment is **DENIED** with respect to Jean–Laurent's excessive force claim in violation of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983; and it is further

**ORDERED** that the motion (Docket No. 98) of defendants Wilkinson and Matos for summary judgment is **DENIED** with respect to Jean–Laurent's unlawful strip search claim in violation of the Fourth

Amendments brought pursuant to 42 U.S.C. § 1983; and it is further

ORDERED that the motion (Docket No. 98) of defendants Jorgenson, Matos, Martinez, and Debra Burrows for summary judgment is DENIED with respect to Jean–Laurent's failure to supervise claim brought pursuant to 42 U.S.C. § 1983; and it is further

ORDERED that the motion (Docket No. 98) of defendants Rodriguez, Robinson, and Doe for summary judgment is DENIED with respect to Jean–Laurent's failure to intervene claim brought pursuant to 42 U.S.C. § 1983; and it is further

ORDERED that the motion (Docket No. 98) of defendant Martin Horn ("Horn") for summary judgment is GRANTED dismissing all claims against Horn; and it is further

ORDERED that the motion (Docket No. 98) of defendants Wilkinson, Matos, Martinez, Burrows, Robinson, Rodriguez, Jorgenson, Doe, and Horn (collectively, "Defendants") for summary judgment is GRANTED dismissing Jean–Laurent's claim for municipal liability brought pursuant to 42 U.S.C. § 1983; and it is further

ORDERED that the motion (Docket No. 98) of Defendants for summary judgment to dismiss Jean–Laurent's claims on qualified immunity grounds is DENIED; and it is further

ORDERED that a conference is scheduled for April 25, 2008 at 10:00 a.m. to discuss preparations for trial, Defendants to arrange for Jean–Laurent's participation by telephone at such conference.

SO ORDERED.